## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

| | |
|---|---|
| DIRK KEUNING, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>COVISINT CORP., BERNARD M. GOLDSMITH, WILLIAM O. GRABE, LAWRENCE DAVID HANSEN, SAMUEL M. INMAN, ANDREAS MAI, JOHN F. SMITH, and JONATHAN YARON,<br><br>Defendants. | )<br>)<br>)<br>)<br>)  **CIVIL ACTION NO. 2:17-cv-11958**<br>)<br>)  **CLASS ACTION COMPLAINT**<br>)  **FOR VIOLATION OF FEDERAL**<br>)  **SECURITIES LAWS**<br>)<br>)<br>)<br>)<br>)<br>) |

Plaintiff Dirk Keuning ("Plaintiff"), by his attorneys, alleges upon information and belief, except for his own acts, which are alleged on knowledge, as follows:

### NATURE AND SUMMARY OF THE ACTION

1.     Plaintiff brings this class action on behalf of the public stockholders of Covisint Corporation ("Covisint" or the "Company") against the members of Covisint's Board of Directors (the "Board" or the "Individual Defendants") for their violations of Section 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15.U.S.C. §§ 78n(a), 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rules 14a-9, 17 C.F.R. 240.14a-9, 17 C.F.R. § 244.100, and

17 C.F.R. § 229.1015(b)(4), arising out of their attempt to sell the Company to Open Text Corporation ("OpenText").

2.     On June 5 2017, OpenText and the Company announced they had entered into an Agreement and Plan of Merger ("Merger Agreement"), by which OpenText, through its wholly owned subsidiary, Cypress Merger Sub, Inc., ("Merger Sub"), will acquire all of the outstanding shares of Covisint in a cash transaction in which Covisint stockholders will receive $2.45 in cash for each share of Covisint common stock (the "Proposed Transaction").  The Proposed Transaction has an equity value of approximately $103 million.

3.     On June 15, 2017, Covisint filed a Preliminary Proxy Statement on a Schedule 14A (the "Proxy") with the SEC.  The Proxy is materially deficient and misleading because, *inter alia*, it fails to disclose material information regarding the Company's financial projections, GAAP reconciliation of the non-GAAP financial measures contained in the Company's projections, which were prepared by Company management and relied upon by Evercore Group LLC ("Evercore"), the Company's financial advisor, the financial analysis performed by Evercore to support its opinion on the fairness of the Proposed Transaction, and the background of the Proposed Transaction.

4.     Without additional information the Proxy is materially misleading in violation of federal securities laws.

5.     By unanimously approving the Proposed Transaction and authorizing the issuance of the Proxy, the Individual Defendants participated in the solicitation even though they knew, or should have known, that the Proxy was materially false and/or misleading. The Proxy is an essential link in accomplishing, and receiving stockholder approval for, the Proposed Transaction.

6.     For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from conducting the stockholder vote on the Proposed Transaction unless and until the material information discussed below is disclosed to Covisint's stockholders or, in the event the Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

7.     This Court has subject matter jurisdiction under 28 U.S.C. § 1331 (federal question jurisdiction) and Section 27 of the Exchange Act (15 U.S.C. § 78aa) because Plaintiff alleges violations of Section 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9.

8.     Personal jurisdiction exists over each defendant either because the defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of

jurisdiction over the defendant by this Court permissible under traditional notions of fair play and substantial justice.

9.      Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because: (i) the conduct at issue took place and had an effect in this District; (ii) Covisint maintains its primary place of business in this District; (iii) a substantial portion of the transactions and wrongs complained of herein, including Defendants' primary participation in the wrongful acts detailed herein, occurred in this District; and (iv) Defendants have received substantial compensation in this District by doing business here and engaging in numerous activities that had an effect in this District.

## PARTIES AND RELEVANT NON-PARTIES

10.     Plaintiff is, and has been at all relevant times, the owner of shares of common stock of Covisint.

11.     Covisint is a corporation organized and existing under the laws of the State of Michigan.  It maintains principal executive offices at 26533 Evergreen Road, Suite 500, Southfield, Michigan, 48076.  Covisint's common stock is traded on the Nasdaq under the ticker symbol "COVS."

12.     Defendant Bernard M. Goldsmith ("Goldsmith") has served as a director of Covisint since November 2012.

4

13.    Defendant William O. Grabe ("Grabe") has served as a director of Covisint since November 2012.

14.    Defendant Lawrence David Hansen ("Hansen") has served as a director of Covisint since January 2014.

15.    Defendant Samuel M. Inman ("Inman") has served as a director of Covisint since January 2014 and the President and Chief Executive Officer since March 2014.

16.    Defendant Andreas Mai ("Mai") has served as a director of the Company since August 25, 2016 when he was appointed as part of the settlement with Dialectic Capital Management LP ("Dialectic"), a holder of approximately 5.5% of the Company's common stock.

17.    Defendant John F. Smith ("Smith") has served as a director of the Company since August 25, 2016. Defendant Smith was appointed to the Covisint Board as part of the Company's settlement with Dialectic.

18.    Defendant Jonathan Yaron ("Yaron") has served as a director of the Company since August 25, 2016. Defendant Yaron was appointed to the Covisint Board as part of the Company's settlement with Dialectic.

19.    Defendants referenced in ¶¶ 12 through 18 are collectively referred to as the "Individual Defendants" or the "Board."

20.     Relevant non-party OpenText is a corporation organized and existing under the laws of Canada. OpenText maintains its corporate headquarters at 275 Frank Tompa Drive, Waterloo, Ontario, N2L 0A1.

21.     Relevant non-party Merger Sub is a Michigan corporation and wholly-owned subsidiary of OpenText that was created for the purposes of effectuating the Proposed Transaction.

## CLASS ACTION ALLEGATIONS

22.     Plaintiff brings this action as a class action on behalf of all persons and/or entities that own Covisint common stock (the "Class"). Excluded from the Class are Defendants and their affiliates, immediate families, legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

23.     The Class is so numerous that joinder of all members is impracticable. While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through discovery, Plaintiff believes that there are thousands of members in the Class. The Merger Agreement states that, as of June 5, 2017, there were 40,865,897 shares of common stock outstanding. All members of the Class may be identified from records maintained by Covisint or its transfer agent and may be notified of the pendency of this action by mail, using forms of notice similar to that customarily used in securities class actions.

24.    Questions of law and fact are common to the Class, including (i) whether Defendants solicited stockholder approval of the Proposed Transaction through a materially false or misleading Proxy in violation of federal securities laws; (ii) whether Plaintiff and other Class members will suffer irreparable harm if securities laws violations are not remedied before the vote on the Proposed Transaction; and (iii) whether the Class is entitled to injunctive relief as a result of Defendants' wrongful conduct.

25.    Plaintiff's claims are typical of the claims of the other members of the Class. Plaintiff and the other members of the Class have sustained damages as a result of Defendants' wrongful conduct as alleged herein.

26.    Plaintiff will fairly and adequately protect the interests of the Class and has no interests contrary to or in conflict with those of the Class that Plaintiff seeks to represent.

27.    A class action is superior to all other available methods for the fair and efficient adjudication of this controversy. Plaintiff knows of no difficulty to be encountered in the management of this action that would preclude its maintenance as a class action.

## FURTHER SUBSTANTIVE ALLEGATIONS

### Company Background

28.     Covisint connects systems of people and things through Identity Services, Internet of Things ("IoT") Services, and Messaging and Orchestration. Its customers include companies in the automotive, energy, travel, life sciences, consumer goods, and insurance industries. The Company was founded in 2000.

### The Sale Process

29.     Beginning in September 2015, the Company began receiving interest from other companies regarding a strategic transaction.  After receiving indications of interest and engaging in preliminary discussions with two parties, Company C and Company E, the Company discussed potential strategic alternatives with Evercore in March 2016.

30.     Beginning in May 2016, the Company began receiving letters from significant shareholders seeking a potential sale of the Company in the face of eroding shareholder value under the Company's standalone plan.

31.     On May 28, 2016, OpenText reached out to a member of the Board to ask about a possible combination of the two companies, but nothing immediately resulted from this conversation.

32.     On June 2, 2016, Dialectic, a hedge fund owning 5.5% of the Company's common stock, sent a letter to the Board expressing concern with the

Company's performance and notifying the Board that it had nominated five candidates for the Board elections at the Company's annual shareholder meeting.

33.    The next day, the Company formally engaged Evercore.

34.    On August 25, 2016, the Company entered into the Cooperation Agreement, pursuant to which the Company agreed to increase the size of its Board from six to nine members, appoint independent directors to the Board, and appoint the new directors to committees of the Board. Dialectic agreed to, among other things, certain standstill provisions and termination of its proxy contest.

35.    Following this change, the Board continued its efforts to sell the Company over the next several months.

36.    As of February 7, 2017, Evercore had discussed such a sale with at least 52 potential acquirers, including both strategic and financial companies.  Of these parties, 21 entered into confidentiality agreements with the Company.

37.    Over the next three months, Evercore and the Board executed a structured bidding process, during which they engaged with several potential acquirers.

38.    OpenText emerged as the highest bidder, and on April 30, 2017, the Board agreed to exclusively negotiate at a price of $2.45 per share.

39.    OpenText conducted due diligence, and the parties discussed operational matters over the next two weeks. During this time, companies that had

previously participated in the bidding process continued to inquire about the status of the process, but Evercore and the Company declined to provide any additional information.

40.     Between May 12 and June 5, 2017, the parties negotiated terms of the Merger Agreement.

41.     On June 3, 2017, the Board held a meeting to review the Proposed Transaction. After receiving Evercore's opinion that the merger consideration was financially fair, the Board approved the Proposed Transaction. However, the Merger Agreement had not been finalized at this time.

42.     Following the meeting and approval of the Proposed Transaction, counsel for the parties continued to negotiate "several remaining points on the Merger Agreement." On June 5, 2017, the parties executed the Merger Agreement and other transaction documents. The Proxy does not disclose whether the Board ever approved the Merger Agreement.

43.     Covisint then issued a press release, reading in relevant part:

> DETROIT, June 05, 2017 (GLOBE NEWSWIRE) -- Covisint Corporation (NASDAQ:COVS) the leading Cloud Platform for building Identity and Internet of Things (IoT) applications, today announced that it has entered into a definitive agreement to be acquired by OpenText™ (NASDAQ:OTEX) (TSX:OTEX), the global leader in Enterprise Information Management (EIM).
>
> Under the terms of the agreement, OpenText will acquire all outstanding shares of Covisint common stock in a transaction valued at approximately $103 million. Covisint shareholders will receive

$2.45 per share in cash for each outstanding share of common stock held. This transaction is compelling for Covisint shareholders, offering immediate liquidity at a substantial premium. The $2.45 per share consideration represents a 23% premium to the prior closing price on June 2, 2017, a 27% premium to the 30-day volume-weighted average price, and a 46% cash-adjusted premium(1) to the 30-day volume weighted average price.

"After a comprehensive review of strategic options by our Board of Directors, we are very pleased to have reached an agreement with OpenText. We believe this all-cash transaction offers Covisint shareholders immediate liquidity and substantial certainty of value, and represents the best path forward for all of Covisint's stakeholders," said Sam Inman, Covisint's CEO. "This acquisition is a strong recognition of Covisint's leadership in Identity and IoT platforms. We are pleased that our process concluded with OpenText as our partner, and we believe they will add significant value and expertise to accelerate our growth. There is no better place for the Covisint Platform, the Covisint team members and our customers at this time in our evolution."

The transaction has been unanimously approved by the Board of Directors of Covisint and is expected to close in the third quarter of calendar 2017. Consummation of the transaction is subject to customary closing conditions, including approval by holders of Covisint's common stock.

Evercore is serving as financial advisor to Covisint and Paul Hastings LLP is acting as legal counsel.

### *The Materially Misleading and Incomplete Proxy*

44.    Defendants have failed to provide stockholders with material information necessary for an informed vote on the Proposed Transaction.  The Proxy, which recommends that the Company's stockholders vote in favor of the

Proposed Transaction, misrepresents and/or omits material information in violation of Sections 14(a) and 20(a) of the Exchange Act.

***Misleading Statements and Omissions Regarding Financial Projections***

45.    The Proxy fails to provide material information concerning the Company's financial projections.

46.    The Proxy discloses "Certain Unaudited Prospective Financial Information" that the Company provided to the Board and Evercore during the process leading up to the execution of the Merger Agreement.   Two sets of projections were created, the "Base Case Projections" that assumes the business remains operating "as-is," and the "Sensitized Case Projections" that assume restructuring the Company to improve cash generation. The items forecasted in both sets of projections include Total Revenue, Total Gross Profit, EBITDA, and Cash for the years 2016A through 2021E.

47.    The Proxy fails to disclose the following Company projections for years 2016A through 2021E:  (i) unlevered free cash flow; (ii) net income; (iii) changes in net working capital; (iv) capital expenditures; (v) net earnings; (vi) earnings per share; (vii) income taxes; (viii) interest expense; (ix) depreciation and amortization; (x) stock-based compensation; and (xi) amortization of intangibles. Without these measures, cherry-picking the disclosed projections materially misleads Covisint stockholders and renders Evercore's financial analyses meaningless.

48.     Moreover, the Proxy fails to provide line item metrics used to calculate the non-GAAP measures of EBITDA, or otherwise reconcile the non-GAAP projections to GAAP for the years 2018 to 2021 for the Base Case Projections.  The Proxy omits any reconciliation of projected EBITDA for the Sensitized Case Projections. The omission of such projections renders the non-GAAP projections included in the Proxy materially incomplete and therefore misleading.

49.     When a company discloses information in a Proxy that includes non-GAAP financial metrics, the Company must also disclose comparable GAAP metrics and a quantitative reconciliation of forward-looking information.  17 C.F.R. § 244.100.

50.     Indeed, the SEC has recently increased its scrutiny of the use of non-GAAP financial metrics in communications with stockholders.  Recently, former SEC Chairwoman Mary Jo White stated that the frequent use by publicly traded companies of unique company-specific non-GAAP financial measures (as Covisint has included in the Proxy) implicates the centerpiece of the SEC's disclosure regime:

> In too many cases, the non-GAAP information, which is meant to supplement the GAAP information, has become the key message to investors, crowding out and effectively supplanting the GAAP presentation.  Jim Schnurr, our Chief Accountant, Mark Kronforst, our Chief Accountant in the Division of Corporation Finance and I, along with other members of the staff, have spoken out frequently about our concerns to raise the awareness of boards, management and investors.  And last month, the staff issued guidance addressing a number of troublesome practices which can make non-GAAP disclosures misleading: the lack of equal or greater prominence for

GAAP measures; exclusion of normal, recurring cash operating expenses; individually tailored non-GAAP revenues; lack of consistency; cherry-picking; and the use of cash per share data. I strongly urge companies to carefully consider this guidance and revisit their approach to non-GAAP disclosures. I also urge again, as I did last December, that appropriate controls be considered and that audit committees carefully oversee their company's use of non-GAAP measures and disclosures.[1]

Further, the SEC has repeatedly emphasized that disclosure of non-GAAP projections can be inherently misleading and has therefore heightened its scrutiny of the use of such projections.[2]   In fact, on May 17, 2016, the SEC's Division of Corporation Finance released new and updated Compliance and Disclosure Interpretations ("C&DIs") on the use of non-GAAP financial metrics that demonstrate the SEC is indeed tightening policy.[3]  One of the new C&DIs regarding forward-looking information, such as financial projections, explicitly requires

---

[1]      Mary Jo White, Chairwoman, SEC, Keynote Address at the International Corporate Governance Network Annual Conference: Focusing the Lens of Disclosure to Set the Path Forward on Board Diversity, Non-GAAP, and Sustainability (June 27, 2016), https://www.sec.gov/news/speech/chair-white-icgn-speech.html.

[2]      *See, e.g.*, Nicolas Grabar and Sandra Flow, *Non-GAAP Financial Measures: The SEC's Evolving Views*, Harvard Law School Forum on Corporate Governance and Financial Regulation (June 24, 2016), https://corpgov.law.harvard.edu/2016/06/24/non-gaap-financial-measures-the-secs-evolving-views/; Gretchen Morgenson, *Fantasy Math Is Helping Companies Spin Losses Into Profits*, N.Y. TIMES, Apr. 22, 2016, http://www.nytimes.com/2016/04/24/business/fantasy-math-is-helping-companies-spin-losses-into-profits.html?_r=0.

[3]      *Non-GAAP Financial Measures, Compliance & Disclosure Interpretations*, SEC (May 17, 2016), https://www.sec.gov/divisions/corpfin/guidance/nongaapinterp.htm.

companies to provide *any* reconciling metrics that are available without unreasonable efforts.

51.     Thus, the above-referenced line-item projections that have been omitted from the Proxy are precisely the types of "reconciling metrics" that the SEC has recently indicated should be disclosed to render non-GAAP financial projections not misleading to shareholders.

**Material Omissions Concerning Evercore's Financial Analyses**

52.     The Proxy describes Evercore's fairness opinion and the various valuation analyses it performed in support of its opinion. However, the description of Evercore's fairness opinion and analyses fails to include key inputs and assumptions underlying these analyses. Without this information, as described below, Evercore's public stockholders are unable to fully understand these analyses and, thus, are unable to determine what weight, if any, to place on Evercore's fairness opinion in determining how to cast their vote on the Proposed Transaction. This omitted information, if disclosed, would significantly alter the total mix of information available to Covisint's stockholders.

53.     The Proxy fails to disclose various material elements of the financial analyses performed by Evercore.

54.     With respect to Evercore's *Discounted Cash Flow Analysis*, the Proxy fails to disclose: (i) the range of illustrative terminal values of Covisint; (ii) the inputs

underlying the discount rates ranging from 13.0% to 15.0%; (iii) Evercore's basis for applying perpetuity growth rates ranging from 2.0% to 5.0% under the perpetuity growth methodology for the Base Case Projections; and (iv) Evercore's basis for applying perpetuity growth rates ranging from -5.0% to -3.0% under the perpetuity growth methodology for the Sensitized Projections.

55.     With respect to Evercore's *Peer Group Trading Multiples Analysis*, the Proxy fails to disclose the individual multiples and financial metrics for the companies observed by Evercore in the analysis.  The failure to provide these multiples misleads stockholders as to the spread and usefulness of the selected multiples, allowing Evercore to select outlier values to skew the fairness analysis.

56.     With respect to Evercore's *Precedent Transactions Analysis*, the Proxy fails to disclose the individual multiples and financial metrics for the companies observed by Evercore in the analysis. The failure to provide these multiples misleads stockholders as to the spread and usefulness of the selected multiples, allowing Evercore to select outlier values to skew the fairness analysis.

57.     With respect to Evercore's *Premiums Paid Analysis*, the Proxy fails to disclose Evercore's basis for including an extremely wide range of transactions, including the "acquisitions of 100% of the equity of U.S. target companies across all industries announced over the last 10 years with equity values between $100 million and $1 billion," amounting to 585 transactions.  Many of these transactions bear little

to no resemblance to the Proposed Transaction and are therefore useless in evaluating the premium to be paid by OpenText.

58.    Without the material information described above, stockholders cannot make an informed decision whether or not to vote in favor of the Proposed Transaction and have been harmed thereby. These omissions materially mislead Covisint stockholders as to the accuracy and value of the analyses underlying Evercore's fairness opinion and the veracity of the fairness opinion itself.

### *The Existence of Standstill and/or Don't-Ask-Don't-Waive Provisions*

59.    The Proxy states that the Company entered into 21 confidentiality agreements with potential acquisition partners, including with OpenText. Descriptions concerning the material terms of these confidentiality agreements, however, are absent from the Proxy, including whether or not these confidentiality agreements contained standstill provisions, and if so, whether the standstill provisions had "don't-ask-don't-waive" provisions and/or sunset provisions, or whether the counterparties could seek a waiver of such standstills to make an unsolicited offer to acquire the Company.  Given that the settlement with Dialectic contained a standstill provision, it is very likely that the confidentiality agreements signed with other parties would also contain such provisions.

60.     If these confidentiality agreements entered into with 20 other parties contained standstills, these parties may be prohibited from coming forward with a topping bid.

61.     The omission of the details regarding these confidentiality agreements in the Proxy renders it materially misleading because it gives the impression that the confidentiality agreement counterparties who had entered into negotiations with the Company prior to its signing of the Merger Agreement have the ability to come forward with a topping bid, when they may, in fact, be contractually prohibited from doing so.   Thus, the omission of this information renders all references to the confidentiality agreements in the Proxy materially false and misleading.

***Potential Conflicts of Interest Facing Evercore***

62.     The Proxy is rendered materially misleading by the omission of material information concerning the potential conflicts of interest faced by Evercore in acting as the Company's financial advisor.

63.     The Proxy discloses that Evercore had not been retained by OpenText over the previous two years and had not received any fees during that time.

64.     However, the Proxy omits any information on Covisint's retention of Evercore over the past two years or any compensation paid to Evercore by Covisint.

65.     These omissions directly impugn the independence of Evercore and its fairness opinion and materially mislead Covisint stockholders as to the motivations

of Evercore, including the quantity of complimentary services the advisor had provided in order to assure a large payment in facilitating a merger. If Evercore has not been engaged or compensated by Covisint, the Proxy must affirmatively reflect those facts.

### Potential Conflicts of Interest Facing Covisint Management

66.    The Proxy omits material information regarding potential conflicts of interest faced by the Company's officers and directors.

67.    Specifically, the Proxy fails to disclose the timing and nature of all communications regarding future employment and/or directorship of Covisint's officers and directors, including who participated in all such communications.

68.    The press release announcing the transaction implies that Company management will remain with the Company following the transaction:

> This acquisition is a strong recognition of Covisint's leadership in Identity and IoT platforms. We are pleased that our process concluded with OpenText as our partner, and we believe they will add significant value and expertise to accelerate our growth. There is no better place for the Covisint Platform, the Covisint team members and our customers at this time in our evolution.

69.    While the press release announcing the Proposed Transaction assumes that the "Covisint team members" will continue with the company after the merger, the Proxy discloses no information regarding when the parties discussed this, what was discussed, and who was involved in such discussions. Without this information, Covisint stockholders have no ability to understand whether Covisint management

and directors faced potential conflicts causing them to favor a transaction with OpenText over other potential strategic alternatives.

70.    Defendants' failure to provide Covisint's stockholders with the foregoing material information constitutes a violation of Sections 14(a) and 20(a) of the Exchange Act and Rule 14a-9 promulgated thereunder.   The Individual Defendants were aware of their duty to disclose this information.   The material information described above that was omitted from the Proxy takes on actual significance in the minds of Covisint's stockholders in reaching their decision whether to vote in favor of the Proposed Transaction.   Absent disclosure of this material information prior to the vote on the Proposed Transaction, Plaintiff and the other members of the Class will be unable to make an informed decision about whether to vote in favor of the Proposed Transaction and are thus threatened with irreparable harm for which damages are not an adequate remedy.

## CLAIMS FOR RELIEF

## COUNT I

**Against All Defendants for Violations of Section 14(a) of the Exchange Act and Rule 14a-9 and 17 C.F.R. § 244.100 Promulgated Thereunder**

71.    Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

72.    Defendants have issued the Proxy with the intention of soliciting stockholder support for the Proposed Transaction.

73.    Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that a proxy statement shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

74.    Specifically, the Proxy violates Section 14(a) and Rule 14a-9 because it is materially misleading in numerous respects and omits material facts, including those set forth above.  Moreover, in the exercise of reasonable care, Defendants should have known that the Proxy is materially misleading and omitted material facts that are necessary to render the statements that are made non-misleading.

75.    The Individual Defendants had actual knowledge of the misrepresentations and omissions of material facts set forth herein or acted with reckless disregard for the truth.

76.    The misrepresentations and omissions in the Proxy are material to Plaintiff and the Class, and Plaintiff and the Class will be deprived of their right to cast a fully informed vote on the Proposed Transaction.

77.    Plaintiff and the Class have no adequate remedy at law.

## COUNT II

### Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act

78.    Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

79.    The Individual Defendants acted as controlling persons of Covisint within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as officers and/or directors of Covisint, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

80.    Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

81.    In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and,

therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same.  The omitted information identified above was reviewed by the Board prior to voting on the Proposed Transaction.  The Proxy at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction.  They were, thus, directly involved in the making of the Proxy.

82.    In addition, as the Proxy sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement.  The Proxy purports to describe the various issues and information that the Individual Defendants reviewed and considered.  The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

83.    By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

84.    As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9, by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these Defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

85.     Plaintiff has no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## RELIEF REQUESTED

**WHEREFORE**, Plaintiff demands judgment against Defendants jointly and severally, as follows:

(A)     declaring this action to be a class action and certifying Plaintiff as the Class representatives and his counsel as Class counsel;

(B)     declaring that the Proxy is materially misleading and contains omissions of material fact in violation of Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder;

(C)     preliminarily and permanently enjoining Defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from proceeding with, consummating, or closing the Proposed Transaction, unless and until Defendants disclose the material information identified above which has been omitted from the Proxy;

(D)     to the extent the Proposed Transaction is consummated prior to the Court's entry of a final judgment, awarding Plaintiff and the members of the Class rescissory damages against the Individual Defendants, including, but not limited to, pre-judgment and post-judgment interest;

(E)     awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses;

(F)     awarding extraordinary, equitable and/or injunctive relief as permitted by law, equity and the federal statutory provisions sued hereunder, and any appropriate state law remedies; and

(G)     granting Plaintiff and the other members of the Class such further relief as the Court deems just and proper.

## <u>JURY DEMAND</u>

Plaintiff demands a trial by jury.

Dated: June 20, 2016                     **SOMMERS SCHWARTZ, P.C.**

By: /s/ *Lance C. Young*
Lance C. Young
One Towne Square, 17th Floor
Southfield, MI 48076
(248) 355-0300
lyoung@sommerspc.com
(P51254)

*Attorneys for Plaintiff*

**OF COUNSEL:**

**LEVI & KORSINSKY LLP**
Donald J. Enright
Elizabeth K. Tripodi
1101 30th Street, N.W.
Suite 115
Washington, DC 20007
(202) 524-4290